CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICHAEL NAMMAR
MARK INCIONG CA BAR #163443
W. KEAUPUNI AKINA #11565
Assistant United States Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Fax: (808) 541-2958
E-Mail: Michael.Nammar@usdoj.gov
     Mark.Inciong@usdoj.gov
     KeAupuni.Akina@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 22 2024

at 8 o'clock and 15 min A M
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. |
|---|---|
| Plaintiff, | ) MEMORANDUM OF PLEA<br>) AGREEMENT |
| vs. | ) DATE: |
| JOHN B. STANCIL, | ) TIME<br>) JUDGE: |
| Defendant. | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, JOHN B. STANCIL, and his attorneys, Walter J. Rodby, Esq. and Caroline Elliot, Esq., have agreed upon the following:

## THE CHARGES

1. The defendant acknowledges that he has been charged in an Information with violating Title 18, United States Code, Section 1962(d) (racketeering conspiracy). The defendant also acknowledges that in *United States v. Miske et al.*, Cr. No. 19-00099 DKW, he has been charged in the Third Superseding Indictment with: (1) in Count 1, violating Title 18, United States Code, Section 1962(d) (racketeering conspiracy), (2) in Count 7, violating Title 18, United States Code, Section 1958 (murder-for-hire conspiracy), (3) in Count 8, violating Title 18, United States Code, Sections 1959(a)(3) and 1959(a)(5) (assault and attempted murder in aid of racketeering), (4), in Counts 9, 17, and 19, violating Title 18, United Sates Code, Section 924(c)(1)(A) (carrying and using a firearm during and in relation to a crime of violence/drug trafficking crime), (5) in Count 10, violating, Title 18, United States Code, Section 1959(a)(6)(conspiracy to commit assault in aid of racketeering), (5) in Count 12, violating Title 18, United States Code, Section 229(a)(2) (conspiracy to use a chemical weapons), (6) in Counts 13 and 14, violating Title 18, United States Code, Sections 229(a)(1), 229(a)(2), and 229A(a)(1) (use of a chemical weapon), (7) in Count 16, violating

Title 18, United States Code, Section 846 (drug trafficking conspiracy), and (8) in Count 18, violating Title 18, United States Code, Section 1951 (Hobbs Act robbery).

2. The defendant has read the charges against him contained in the Information as well as the Third Superseding Indictment, and those charges have been fully explained to him by his attorney.

3. The defendant fully understands the nature and elements of the crimes with which he has been charged.

## THE AGREEMENT

4. The defendant agrees to waive indictment and enter a voluntary plea of guilty to the Information, which charges him with conspiring to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(c) (Count 1). The defendant is aware that he has the right to have this felony asserted against him by way of grand jury indictment. The defendant hereby waives this right and consents that this offense may be charged against him by way of the Information. In return, the government agrees to move to dismiss Counts 1, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18, and 19 of the Third Superseding Indictment in Cr. No. 19-00099 DKW as to the defendant after sentencing. The

government and the defendant also agree to be bound by the stipulations set forth in paragraph 10 of this Agreement.

5. The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. The defendant enters this plea because he is in fact guilty of conspiring to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(c) as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7. The defendant understands that the penalties for the offense to which he is pleading guilty include:

    a. a term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release of up to 3 years.

    b. In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty. The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessment, before the commencement of any portion of sentencing. The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will

4

allow, though not require, the prosecution to withdraw from this Agreement at its option.

    c.    **Restitution.**  The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's commission of the offense charged in Count 1 of the Information. The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office. The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether the counts of the Information associated with such losses will be dismissed as part of this Agreement.

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

    a.    From a precise date unknown, but by at least in or about 2012, and continuing to at least in or about June 2020, JOHN B. STANCIL, the defendant, and others known and unknown, were members and associates of the "Miske Enterprise." Members and associates of the Miske Enterprise operated

5

principally under the direction and protection of Michael J. Miske, Jr., who used his power over members and associates of the Miske Enterprise, his reputation for violence in the community, and the various corporate entities under his control to enrich the members and associates of the Miske Enterprise and to embolden their criminal activities.

   b. The Miske Enterprise, including its leadership, membership, and associates, constituted an "enterprise" as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The Miske Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Miske Enterprise operated within the District of Hawaii and elsewhere and constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Miske Enterprise.

   c. Beginning at least in or about 2012, STANCIL and others known and unknown, being persons employed by and associated with the Miske Enterprise, willfully and knowingly combined, conspired, confederated, and agreed to together and with each other to violate the racketeering laws of the United States, namely, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Miske

6

Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

d.  The racketeering activity to which STANCIL and others agreed included, among other things: (a) acts relating to chemical weapons, in violation of 18 U.S.C. § 229 and (b) acts relating to murder-for-hire, in violation of 18 U.S.C. § 1958. In addition, STANCIL assisted with multiple assaults on behalf of Miske and the Miske Enterprise.

e.  **Acts Relating to Chemical Weapons.** On consecutive nights in March 2017, STANCIL and other members and associates of the Miske Enterprise participated in chemical weapon attacks on two nightclubs located in Honolulu, in the District of Hawaii. Both attacks were carried out on Miske's orders. For each attack, co-conspirator Jacob L.L. Smith (Smith) served as the driver. In advance of one attack, Smith drove to the house of STANCIL, who provided Smith with a toxic chemical called chloropicrin, which is capable of causing death, temporary incapacitation, or permanent harm to humans. STANCIL provided Smith with a quantity of chloropicrin capable of causing harm to many people. STANCIL then gave Smith advice on how best to release the chloropicrin in the nightclub. STANCIL knew how to do so because he himself had previously dispersed chloropicrin in a crowded Waikiki nightclub in 2015 at

Miske's direction. After obtaining the chloropicrin from STANCIL, Smith gave it to Ashlin Akau who later entered the targeted nightclub and released the chloropicrin. The release of the chloropicrin resulted in nightclub patrons scrambling for the exits as they experienced burning in their eyes and difficulty breathing.

   f. **Acts Involving Murder for Hire.** In or around 2016, STANCIL joined a murder-for-hire conspiracy in which Victim #1 was the target. The conspiracy involved, among others, Miske, Lance Bermudez (Bermudez), Dae Han Moon (Moon), and Smith. Miske put the murder contract on Victim #1 because Miske believed Victim #1 had cooperated with law enforcement and provided information about Miske's criminal activities. Miske asked to meet with Smith and Bermudez at the Kamehameha Shopping Center in the Kalihi area of Oahu. During the meeting, Miske expressed his interest in having Victim #1 killed for $60,000. Bermudez agreed to take the job and thereafter met with STANCIL in Waimanalo. During the meeting in Waimanalo, STANCIL showed Bermudez where Victim #1 lived. STANCIL knew he was showing Bermudez where Victim #1 lived so Bermudez could kill Victim #1, as directed by Miske.

   g. Bermudez then enlisted Moon to assist in the murder and, on multiple occasions, Bermudez and Moon traveled to Waimanalo and laid in wait

8

outside Victim #1's home in the early morning hours waiting for Victim #1 to come outside. Bermudez and Moon were armed with firearms and were prepared to shoot and kill Victim #1 once he left the residence. However, Victim #1 never came outside while they were present. Bermudez was eventually called off by Miske and thereafter Bermudez and Moon made no further attempts to commit the murder. Victim #1 was not killed as result of the co-conspirators efforts.

      h.    **Assaults.**  STANCIL introduced another co-conspirator, Smith, to Miske so that Smith could be on call and available to commit non-fatal acts of violence whenever Miske called upon Smith to do so. For multiple assaults directed by Miske, STANCIL served as the driver. For example, in January 2016, STANCIL drove Smith to assault Victim #2, an elderly used car dealer who was bidding against Miske at car auctions. After Smith assaulted Victim #2, STANCIL served as the getaway driver. STANCIL, himself, participated in an assault of Victim #3, a used car dealer who was also bidding against Miske at a car auction. This assault took place in the Wendy's parking lot near the Honolulu airport in October 2015. STANCIL and another co-conspirator, Kaulana Freitas, punched Victim #3 multiple times after being given the signal to do so by Miske.

9. Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10. Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

   a. The parties agree that they will jointly request that the sentencing hearing for the defendant occur after the trial concludes in *United States v. Michael J. Miske*, Cr. No. 19-0099. The parties understand that the Court may not accommodate this request.

   b. As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these events occur, and the defendant's acceptance of responsibility

10

continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate. *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12. The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13. The defendant is aware that he has the right to appeal his convictions and the sentence imposed. The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his convictions and any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution order imposed, or the manner in which the sentence or restitution order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The

defendant understands that this waiver includes the right to assert any and all legally waivable claims.

    a.    The defendant also waives the right to challenge his convictions or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

    c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial obligations that may be imposed upon him, the defendant agrees as follows:

a. The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party. The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement. To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office. The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case. The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office. The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or

remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

   b. The defendant expressly authorizes the United States Attorney's Office to obtain his credit report. The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing. The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

   c. Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15. The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The defendant agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16. The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

17. The defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e. At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

18. The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19. If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial. The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn. The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.

Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20. The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope, and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

21. To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

//

//

//

//

//

//

22. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

*/s/ Ken Sorenson*                     Dated: 1/20/2024
KENNETH M. SORENSON
Chief, Criminal Division

*/s/ M. Nammar*                      Dated: 1/20/24
MICHAEL NAMMAR
MARK A. INCIONG
W. KEAUPUNI AKINA
Assistant U.S. Attorneys

*/s/ John Stancil*                      Dated: 1/20/24
JOHN B. STANCIL
Defendant

*/s/ Walter Rodby*                    Dated: 1/20/24
WALTER RODBY
CAROLINE ELLIOT
Attorneys for Defendant

19